1

2

3

4

5

6                       UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
7                                  AT SEATTLE

8   LINDA A. BOOBER,

9                              Plaintiff,              Case No. C15-423-BHS-BAT

10              v.                                     **REPORT AND
                                                      RECOMMENDATION**
11  CAROLYN W. COLVIN, Commissioner of
    Social Security,
12
                               Defendant.
13

14         Linda A. Boober seeks review of the denial of her Supplemental Security Income,

15  Disability Insurance Benefits, and Period of Disability applications.  She contends the ALJ erred

16  by improperly evaluating the opinions of state-agency consultants Drs. Brown and Nelson, and

17  by denying her request to issue a subpoena to Dr. Nelson.  Dkt. 11.  As discussed below, the

18  Court recommends the case be **REVERSED** and **REMANDED** for further administrative

19  proceedings under sentence four of 42 U.S.C. § 405(g).

20                                 **BACKGROUND**

21         Ms. Boober is currently 55 years old, has a high school education, and has worked as a

22  customer service representative, work force manager, and staffing coordinator.  Tr. 28, 40.  On

23  May 30, 2012 and January 17, 2013, she applied for benefits, alleging disability as of May 1,

REPORT AND RECOMMENDATION - 1

1    2011.  Tr. 16.  Her applications were denied initially and on reconsideration.  *Id*.  The ALJ

2    conducted a hearing on June 17, 2013, finding Ms. Boober not disabled.  Tr. 30.

3          Utilizing the five-step disability evaluation process,[1] the ALJ found Ms. Boober met the

4    insured status requirements through September 30, 2015; had not engaged in substantial gainful

5    activity since her alleged onset date; and that she has severe impairments of obesity, peripheral

6    neuropathy, asthma, sleep apnea, anxiety, and affective disorder.  Tr. 19.  The ALJ found Ms.

7    Boober has the residual functional capacity ("RFC") to perform sedentary work but with a

8    number of exceptions.  *See* Tr. 22.  As relevant here, the ALJ found Ms. Boober can respond

9    appropriately to supervision, co-workers, and occasional exposure to or interaction with the

10   general public.  *Id.*  The ALJ also found Ms. Boober could perform her past relevant work as a

11   staffing coordinator, and in the alternative, she could perform work as a data entry operator.  Tr.

12   28-29.  As the Appeals Council denied Ms. Boober's request for review, the ALJ's decision is

13   the Commissioner's final decision.  Tr. 1-6.

## DISCUSSION

**A.     The ALJ Erred in Part When Evaluating the Medical Opinion Evidence**

       Ms. Boober contends the ALJ erred in assigning "significant weight" to two non-
examining state-agency consultants' opinions, but failing to consider or adopt certain aspects of
those opinions.  Dkt. 11 at 7-12.  The Court finds the ALJ erred in failing to discuss or consider
the consultants' opinions regarding work-related absences.

       **1.     *Absences***

       In 2012, state-agency consultants Michael Brown, Ph.D., and Gary Nelson, Ph.D., both
opined Ms. Boober would be "depressed at times w/decreased motivation which could lead to a

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

1    few absences, but not so as to preclude productive activity in a competitive employment

2    situation." Tr. 90, 105. The ALJ assigned significant weight to the evaluations but did not

3    discuss this portion of the opinions. *See* Tr. 26. Ms. Boober contends the error is harmful

4    because the Vocational Expert ("VE") testified at her hearing that an individual missing two or

5    more days of work per month on a regular basis would "probably not be able to retain

6    employment." Dkt. 11 at 7; Tr. 78. The Court agrees.

7         The Commissioner first argues there is no error when an ALJ has incorporated a doctor's

8    assessed limitations into a claimant's RFC even though the RFC is "not identical to the doctor's

9    assessed limitation." Dkt. 12 at 2. The argument presupposes the ALJ incorporated the opinion

10   into Ms. Boober's RFC. The argument has no place here — not only is the RFC in this case not

11   "identical" to the providers' assessed limitations regarding absences, but it wholly ignores

12   limitations that could change the outcome of Ms. Boober's case. If the RFC assessment conflicts

13   with an opinion from a medical source, the adjudicator must explain why the opinion was not

14   adopted." Social Security Ruling ("SSR") 96–8p. Here, the ALJ failed to discuss the limitation at

15   issue in any capacity. This was reversible error.

16        The Commissioner also argues the doctors' apparent qualifying statement regarding *not*

17   precluding "productive activity in a competitive employment situation" essentially neutralizes

18   the doctors' statements regarding absences. Dkt. 12 at 4. The Commissioner thus concludes Ms.

19   Boober has "not shown that this part of [the doctors'] opinion was inconsistent with the ALJ's

20   decision such that the ALJ erred by failing to address it." *Id.* The Court also rejects this

21   argument. Without any discussion or analysis by the ALJ, the Court finds itself in the position of

22   an arbiter choosing between the parties' post-hoc interpretations. But it is the ALJ who is

23   responsible for resolving ambiguities and conflicts in the medical record, not this Court on

REPORT AND RECOMMENDATION - 3

1  appeal.  *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53

2  F.3d 1035, 1039 (9th Cir. 1995).  An ALJ "must consider all medical opinion evidence,"

3  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008), and "must explain why significant

4  probative evidence has been rejected," *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393,

5  1394-95 (9th Cir. 1984).  The ALJ failed to do so.

6          Finally, the Commissioner argues the ALJ reasonably interpreted the providers' reference to

7  "a few absences" as meaning a few absences per year or some other period longer than a month.

8  Dkt. 12 at 3-4.  Even if this may be the case, the Court has no meaningful way to confirm it, because

9  the ALJ failed to provide any reasoning for disregarding the assessment.  The Court is "constrained

10  to review the reasons the ALJ asserts," *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003),

11  and may not substitute its "conclusions for the ALJ's, or speculate as to the grounds for the

12  ALJ's conclusions."  *Treichler v. Comm'r, Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir.

13  2014).  Thus, the argument also fails.

14          **2.      *Interactions with others***

15          Both Drs. Brown and Nelson also opined Ms. Boober could tolerate superficial

16  interactions with others.  Tr. 91, 106.  Additionally, Dr. Nelson opined Ms. Boober should only

17  work with the public on an "occasional basis."  Tr. 106.  The ALJ found Ms. Boober had the

18  RFC to "respond appropriately to supervision, co-workers, and deal with occasional changes in

19  the work environment that requires only occasional exposure to or interaction with the general

20  public."  Tr. 22.  Ms. Boober contends the ALJ erred by failing to incorporate the non-examining

21  doctors' opinions into her RFC/hypothetical.  Dkt. 11 at 9.

22          The Commissioner argues that, to the extent the doctors' opinions may be inconsistent

23  with Ms. Boober's RFC/hypothetical, any error is harmless because the VE and ALJ found Ms.

Boober could work as a data entry operator.  Dkt. 12 at 5.  Under the definition of data entry operator provided in the Dictionary of Occupational Titles ("DOT"), social interaction is not indicated, talking is "not present," and hearing is required only occasionally.  *Id.*; *see also* DICOT 203.582-054, 1991 WL 671700.  During the hearing, the VE also testified the job "would not deal with the general public." Tr. 72.  He further testified his testimony was consistent with the DOT.  Tr. 73.  For these reasons, the Commissioner contends the job "does not require more than superficial social interactions."  Dkt. 12 at 5.

In her reply, Ms. Boober contends the DOT's definition of talking is provided in the *Revised Handbook for Analyzing Jobs*, which describes "talking" as "expressing or exchanging ideas by means of the spoken word to impart oral information to clients or to the public and to convey detailed spoken instructions to other workers accurately, loudly, or quickly."  Dkt. 13 at 5 (*citing Revised Handbook for Analyzing Jobs*, 12-7 (U.S. Dept. of Labor 1991)).  After each "demand factor"[2] and definition, *see id.* at 12-1, the *Revised Handbook for Analyzing Jobs* also provides examples.  Ms. Boober appears to take the peculiar position that these examples, rather than the definition provided, inform the DOT's use of the word.  For example, Ms. Boober contends that never talking cannot mean a data entry operator never talks to a supervisor or co-worker, because "talking" "refers to activities such as answering inquiries regarding transportation schedules and instructing pilots."  Dkt. 13 at 5 (*citing* example in *Revised Handbook for Analyzing Jobs*, 12-7).[3]  But nothing in the *Revised Handbook for Analyzing Jobs*

---

[2] "Demand factors" include talking, hearing, stooping, feeling, and other physical demand requirements.  *Revised Handbook for Analyzing Jobs*, 12-1 – 12-9.

[3] Similarly, Ms. Boober completely ignores the definition of "hearing" — which simply and unmistakenly provides "perceiving the nature of sounds by ear" — and instead states that hearing "refers to jobs that require specific hearing demands such as listening 'attentively to take dictation and answer telephone.'"  Dkt. 13 at 5 (*citing* example from *Revised Handbook for Analyzing Jobs*, 12-7).

suggests the examples are exhaustive.  Ms. Boober argues that a data entry operator cannot be expected to never speak to a supervisor or co-worker, Dkt. 13 at 5, but by the same token, there is nothing to suggest that she *must* in a manner that exceeds superficial or occasional interactions.  In short, the *Revised Handbook for Analyzing Jobs* simply does not provide any authority indicating the DOT's definition of data entry operator requires more than superficial interaction with others or more than occasional interaction with the public.

On a related note, the Court observes Ms. Boober never contends the ALJ erred in relying on the VE's testimony due to conflicts with the DOT.  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that takes into consideration her residual functional capacity, age, education, and work experience.  *See Tackett v. Apfel*, 180 F.3d 1094, 1100-01 (9th Cir. 1999).  Ms. Boober has not shown the Commissioner harmfully erred at step five.  Thus, as to this portion of the providers' opinions, the ALJ's decision should be affirmed.

**3.**    ***Workplace changes***

Finally, Ms. Boober argues the ALJ implicitly and erroneously rejected Dr. Nelson's opinion that she would "work best [in a] setting with little to no change from day to day" by limiting her to only "occasional changes in the work environment."  Dkt. 11 at 10-12 (*citing* Tr. 22, 106).  Ms. Boober asserts, in a conclusory manner, that "working best" with little to no change is inconsistent with "occasional" (*i.e.*, up to 1/3 of the time) changes.  Dkt. 11 at 11.  She offers no support for the assertion.

The Court finds Ms. Boober's RFC adequately captures and is consistent with Dr. Nelson's opinion that Ms. Boober would "work best" in a setting with little to no change from day to day.  Ms. Boober's argument amounts to a requirement that an ALJ recite a physician's

conclusions verbatim.  But "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012).  An ALJ need not provide reasons for rejecting a physician's opinions where the ALJ incorporated the opinions into the RFC.  *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010).

When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  *Morgan v. Comm'r, Soc. Sec. Admin*, 169 F.3d 595, 599 (9th Cir. 1999) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).  Ms. Boober has failed to demonstrate reversible error in the ALJ's consideration of this portion of Dr. Nelson's opinion.  The Court thus recommends affirming it.

**B.     The ALJ Did Not Err in Declining to Issue a Subpoena**

Ms. Boober also argues the ALJ committed reversible error in denying her request to issue a subpoena to Dr. Nelson.  Dkt. 11 at 12-16.  By letter dated June 12, 2013, Ms. Boober's counsel at the administrative level sought to subpoena Dr. Nelson because, *inter alia*:

> The doctor's opinion is noteworthy for its failure to specify the degree to which Linda Boober's concentration, persistence, and pace would "wax and wane" and the number of absences Linda Boober would have.  I would like to ask the doctor to clarify these material aspects of his opinion and to question the doctor concerning the basis for these statements. [4]

Tr. 262 (*citing* Tr. 105).  The ALJ rejected Ms. Boober's request because Dr. Nelson was not an examining physician and because non-examining physicians "are not, generally, afforded the

---

[4] In her response, the Commissioner discusses almost every other reason Ms. Boober offered for requesting a subpoena, but plainly ignores this most relevant reason.  *See* Dkt. 12 at 8-11.

1    same weight" as examining physicians.  Tr. 16.

2          "A claimant in a disability hearing is not entitled to unlimited cross-examination, but is

3    entitled to such cross-examination as may be required for a full and true disclosure of the facts."

4    *Copeland v. Bowen,* 861 F.2d 536, 539 (9th Cir. 1988) (*citing Solis v. Schweiker,* 719 F.2d 301,

5    302 (9th Cir. 1983)).  Though the decision is discretionary, an ALJ abuses his discretion when he

6    denies a claimant's request to cross-examine a medical source where that source's report is

7    "crucial" to the ALJ's decision.  *Solis*, 719 F.2d at 302.

8          Ms. Boober argues the ALJ failed to provide legally sufficient reasons for denying her

9    request to subpoena Dr. Nelson.  Dkt. 11 at 14-15.  The Commissioner does not address the

10   argument.  *See* Dkt. 12 at 8-10.  The Court agrees with Ms. Boober that the ALJ failed to provide

11   legally sufficient reasons; however, Ms. Boober has failed to demonstrate any error was harmful.

12   Rather than explaining why Dr. Nelson's testimony could have been material to the ultimate

13   decision regarding disability, she argues only that it was "reasonably necessary" for her to

14   question the doctor so he could explain his opinion.  Dkt. 11 at 15-16.  By this logic, harmful

15   error occurs in the act of denying any request to subpoena a provider.  This cannot be the case.

16         Additionally, Ms. Boober's suggestion that Dr. Nelson's opinions were crucial to the

17   ALJ's nondisability determination misunderstands *Solis*.  In *Solis*, the Court examined "the

18   extent to which a disability claimant is entitled to cross-examine a physician whose written

19   report of medical findings supports a finding of nondisability."  *Solis,* 719 F.2d at 301.  The

20   physician-witness in *Solis* was considered "crucial" in this context because, although the

21   physician's findings "substantially contradicted" the other medical testimony, the findings were

22   still relied upon by the ALJ to support a nondisability determination.  *See id.*  This is not the case

23   here.  Here, Ms. Boober has not demonstrated that Dr. Nelson's opinions were substantially

1   contradicted by other medical testimony, or that the ALJ relied on the opinions to find her not

2   disabled.  In fact, the crux of Ms. Boober's first argument relies on an opposing proposition –

3   that the ALJ erred because he *ignored* Dr. Nelson's opinions in denying Ms. Boober's disability

4   claims.  The arguments are incompatible.

5          Where the ALJ "'commits legal error, [the Court] uphold[s] the decision where that error

6   is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination.'"

7   *Brown-Hunter v. Colvin*, No. 13-15213, —— F.3d —— , 2015 WL 4620123, at *4, *6 (9th Cir.

8   Aug. 4, 2015) (internal citations omitted).  Accordingly, the Court finds that even if the ALJ

9   gave insufficient reasons for declining to subpoena Dr. Nelson, the error was harmless.  The

10  ALJ's decision should be affirmed.

11                                        **CONCLUSION**

12         For the foregoing reasons, the Court recommends that the Commissioner's decision be

13  **REVERSED** and the case be **REMANDED** for further administrative proceedings under

14  sentence four of 42 U.S.C. § 405(g).

15         On remand, the ALJ should reevaluate Drs. Brown's and Nelson's statements regarding

16  absences, and as necessary, further develop the record and reevaluate Ms. Boober's RFC and the

17  remainder of the five-step evaluation process.

18         A proposed order accompanies this Report and Recommendation.  Any objection to this

19  Report and Recommendation must be filed and served no later than **September 10, 2015**.  If no

20  objections are filed, the Clerk shall note the matter for **September 11, 2015** as ready for the

21  Court's consideration.  If objections are filed, any response is due within 14 days after being

22  served with the objections.  A party filing an objection must note the matter for the Court's

23  consideration 14 days from the date the objection is filed and served.  Objections and responses

REPORT AND RECOMMENDATION - 9

1    shall not exceed ten pages.  The failure to timely object may affect the right to appeal.

2           DATED this 27th day of August, 2015.

3

4

5                                                    _____

6                                                    BRIAN A. TSUCHIDA
                                                     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 10